Ben Wayne SCHUTZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 1933–99.

Court of Criminal Appeals of Texas.

Dec. 19, 2001.

Frank Blazek, Huntsville, for appellant.

David P. Weeks, DA, Kay Douglas, Assist. DA, Huntsville, for state.

KELLER, Presiding Judge, delivered the opinion of the Court, joined by MEYERS, WOMACK, KEASLER, HERVEY, and COCHRAN, JJ.

Upon remand from this Court to conduct a harm analysis pursuant to Rule of

Appellate Procedure 44.2(b),[1] the Court of Appeals for the First District found that the trial court's erroneous admission of certain expert testimony affected appellant's substantial rights. The State now asks us to consider two issues relating to the propriety of the Court of Appeals' harm analysis: whether the appellant bore the burden of demonstrating that the error affected his substantial rights, and whether the Court of Appeals was required to examine the record as a whole. Our jurisprudence compels us to answer the first issue in the negative and the second in the positive, and to reverse the Court of Appeals' judgment.

## I.

The State prosecuted appellant before a jury for aggravated sexual assault of his six-year-old daughter. During trial, the court permitted Patricia Burns, a social worker, to testify that, in her opinion, the complainant had "not exhibited any evidence of fantasizing." Similarly, the trial court permitted Dr. David Poole, a psychologist, to testify that, in his opinion, it was unlikely that the complainant was the subject of manipulation and that the complainant's allegations "were not the result of fantasy." The jury acquitted appellant of aggravated sexual assault by penetration, convicted him of aggravated sexual assault by contact, and sentenced him to thirty years in prison.

This Court reversed the original Court of Appeals opinion that affirmed the conviction.[2] In our view, some of Burns' and Poole's testimony was a "direct comment on the truthfulness of complainant's allegations"[3] and was admitted erroneously.

On remand to the Court of Appeals for a harm analysis, the court concluded that the error was non-constitutional and that reversal of the conviction was appropriate only if the error affected appellant's substantial rights.[4] The court then stated, "Because the outcome of the trial of the charge of 'contact' ... depended on whether the jury believed complainant or appellant, we conclude appellant's substantial rights were affected when the trial court improperly admitted opinion testimony regarding the truthfulness of complainant's allegations."[5]

Justice Taft dissented. Chief Justice Schneider and Justices Wilson and Nuchia joined Justice Taft's opinion and dissented to the denial of en banc consideration. Arguing that the court was obliged to consider the entire record, Justice Taft analyzed significant portions of the testimony, including that of Burns and Poole; the complainant; her mother, who testified about complainant's truthfulness; her pediatrician, who testified about her examination of the complainant; an emergency room physician, who reviewed a medical report concerning complainant's vaginal injuries; appellant himself; and appellant's five character witnesses.[6] The dissent also analyzed the issues that were contested during argument, the trial court's charge to the jury, and the jury's verdict.[7] From this examination of the whole record, Jus-

---

1. The Rule states that, "[a]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX.R.APP. PROC. 44.2(b).

2. See *Schutz v. State*, 957 S.W.2d 52 (Tex. Crim.App.1997).

3. *Id.* at 73.

4. See *Schutz v. State*, 998 S.W.2d 903 (Tex. App.—Houston [1st Dist.] 1999, State's pet. granted).

5. *Id.* at 904–05.

6. *Id.* at 905–13 (Taft, J., dissenting).

7. *Id.* at 913–15.

tice Taft concluded that appellee "has not presented any reasoned analysis demonstrating that his substantial rights were affected" by the erroneous admission of the expert testimony at issue.[8]

We granted the State's petition for discretionary review to determine whether the State is correct in asserting that the Court of Appeals erroneously reviewed only a portion of the record, thus tainting its harm analysis, and in asserting that appellant had not met his burden to demonstrate that his substantial rights were affected by the trial court's error.

## II.

The State's contention that appellant had the burden of showing harm under Rule 44.2(b) is unavailing. The State relies primarily on Justice Taft's statement in dissent that "[m]erely asserting that inadmissible testimony is harmful does not provide the reasoning needed to meet appellant's burden to show harm under Rule 44.2(b)" and the dissent's citation to one of the First Court's own cases as authority for the statement.[9]

■ This Court, however, has held to the contrary. We have explained that, in evaluating the harm that a defendant has suffered as a result of a trial court's error,

> [w]e do not resolve the issue by asking whether the appellant met a burden of proof to persuade us that he suffered some actual harm. No party should

have a burden to prove harm from an error, and there ordinarily is no way to prove 'actual' harm. Burdens and requirements of proving actual facts are appropriate in the law of evidence, but they have little meaning for the harmless error decision.[10]

Thus, as we reaffirmed in another Rule 44.2(b) case, neither the State nor appellant must demonstrate harm when an error has occurred.[11] Rather, it is the appellate court's duty to assess harm after a proper review of the record.[12]

## III.

■ The State's contention that the Court of Appeals was required to view the record in its entirety need not detain us long. We have held that we will not overturn a criminal conviction for non-constitutional error if the appellate court, *after examining the record as a whole*, has fair assurance that the error did not influence the jury, or influenced the jury only slightly.[13] This means that the appellate court should consider everything in the record, including testimony and physical evidence, the nature of the evidence supporting the verdict, and the character of the error and its relationship to other evidence.[14] In addition, the appellate court may consider the trial court's instructions to the jury, the theories of the case that the State and defendant have espoused, arguments to

---

**8.** *Id.* at 915.

**9.** *Schutz,* 998 S.W.2d at 905 (citing *Merritt v. State,* 982 S.W.2d 634, 636–37 (Tex.App.— Houston [1st Dist.] 1998, pet. ref'd as untimely filed)).

**10.** *Ovalle v. State,* 13 S.W.3d 774 (Tex.Crim. App.2000).

**11.** *Johnson v. State,* 43 S.W.3d 1, 4 (Tex.Crim. App.2001).

**12.** *Id.* at 5.

**13.** *Morales v. State,* 32 S.W.3d 862, 867 (Tex. Crim.App.2000); *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998). *See also King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997) (holding that a "substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.").

**14.** *See Morales,* 32 S.W.3d at 867.

the jury and relevant voir dire.[15] This very process of evaluating the entire record to determine whether the error affected the jury's verdict is the performance of a Rule 44.2(b) harm analysis.[16] Both sides appear to agree that this is the state of the law and we reaffirm it today.

## IV.

■ The issue over which the parties are divided is whether the Court of Appeals actually engaged in this process. The court's analysis relied on the fact that the outcome of the trial depended on whether the jury believed appellant or the complainant.[17] Based on that fact, and apparently no other, the court concluded that the error was harmful.

The danger posed by the erroneous admission of expert testimony that was a direct comment on the complainant's credibility was that the jury could have allowed that testimony to supplant its decision.[18] But the jury acquitted appellant in one case and convicted him in the other, so it is apparent that the jury believed some of the complainant's testimony but not all of it, at least to the extent of having a reasonable doubt about the penetration case. The Court of Appeals apparently recognized the incongruity of the jury being overly influenced by expert testimony about the complainant's credibility yet acquitting appellant on the penetration charge, but the court explained the inconsistency away by reasoning that there was considerably more evidence to support a conviction on the contact charge than there

was on the penetration charge.[19] This is correct, but the acquittal nevertheless shows that the jury did not unconditionally believe the complainant. The child testified briefly, but directly and unequivocally, that appellant sexually assaulted her by penetration. The acquittal on that charge is inconsistent with an acceptance of the child's credibility. Given the significance of the acquittal, the record does not support a finding that the jury allowed the expert testimony to supplant its own decision.

Moreover, as Justice Taft's opinion points out, most of the testimony about manipulated testimony in general and about whether the complainant, specifically, exhibited traits indicative of manipulation, was admissible or admitted without objection. Judge Womack, in his concurring opinion on this case when it first reached our Court, viewed the harmlessness of the error as "a foregone conclusion."[20] He said that when a jury hears testimony that children who have been manipulated exhibit certain traits, and hears that this child did not exhibit those traits, the conclusion that the expert believes the child had not been manipulated is ineluctable.[21] The Court said that for Judge Womack's syllogism to work, the first premise of the syllogism would have to be that *all* manipulated children exhibit these traits.[22] On that basis we found the logic of the argument was not sound.[23] It is nevertheless true that, even if the conclusion does not *necessarily* follow from

---

15. *See id.*

16. *Llamas v. State*, 12 S.W.3d 469, 471 & 471 n. 2 (Tex.Crim.App.2000).

17. *Schutz*, 998 S.W.2d at 904, 905.

18. *Schutz*, 957 S.W.2d at 59.

19. *Schutz*, 998 S.W.2d at 904 n. 2.

20. *Schutz*, 957 S.W.2d at 79 (Womack, J. concurring).

21. *Id.*

22. *Schutz*, 957 S.W.2d at 71 n. 10.

23. *Id.*

the premises, it does follow to the same extent that the first premise is accurate. That is, if an expert testified that manipulated children usually exhibit certain characteristics, then a jury could predict that the expert would probably testify that a particular child who did not exhibit those characteristics was not manipulated. So, regardless of whether the conclusion is "ineluctable," there is at least a reduced likelihood that an expert's improper testimony about his conclusion would influence the jury beyond the power of his proper testimony as to the premises. To the extent that the experts' conclusions followed from their premises, the jury was less likely to be improperly influenced by an explicit statement of what was already implicit in the testimony.

In addition, there was testimony from the victim's mother that the victim was a truthful person, and there was testimony from defense witnesses that appellant was a truthful, peaceful, law-abiding person who exhibited no unnatural sexual tendencies toward children. Finally, the State presented expert testimony concerning physical injuries suffered by the victim that were consistent with purposeful penetration while the defense, in cross-examination, raised an issue about the timing of those injuries. This testimony was recited in exhaustive detail in Justice Taft's dissenting opinion in the court below and we need not repeat it here.[24] Suffice it to say, the inadmissible expert testimony was a small portion of a large amount of evidence presented that the jury could have considered in assessing the victim's credibility.

The Court of Appeals' analysis focused on the fact that the case against appellant rested on the credibility of the complainant. That fact is significant, but it is not conclusive. In light of the entirety of the testimony, and of the acquittal on the pen-

etration charge, error in the admission of the experts' testimony was harmless. The judgment of the Court of Appeals is reversed, and the trial court's judgment is affirmed.

PRICE and JOHNSON, JJ., concurred in the result.

HOLCOMB, J., dissented.

---

24. *See Schutz,* 998 S.W.2d at 908–914.