NUMBER 13-99-591-CR


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG




JESUS MARTIN SANCHEZ, Appellant,

v.


THE STATE OF TEXAS, Appellee.




On appeal from the 197th District Court


of Cameron County, Texas.






 O P I N I O N



 Before Chief Justice Valdez and Justices Hinojosa and Castillo


 


 Opinion by Chief Justice Valdez

 Appellant, Jesus Martin Sanchez, was convicted of indecency with a child (1) and
aggravated sexual assault (2) and sentenced to thirty years and ninety-nine years
imprisonment, respectively. The sentences run consecutively. In an unpublished opinion,
we determined that the trial court erred in excluding evidence regarding the victim's
reputation for truthfulness under Texas Rule of Evidence 608 and then reversed after
conducting a harm analysis under Texas Rule of Appellate Procedure 44.2(a). Sanchez
v. State, No. 13-99-591-CR, slip op. at 1 (Tex. App.-Corpus Christi Dec. 21, 2000)
(hereinafter Sanchez I). The court of criminal appeals granted the State's petition for
discretionary review (3) and remanded the case to this Court in order to consider what harm
standard applies for the erroneous exclusion of defense evidence in light of its recent
decision in Potier v. State, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002). Sanchez v. State,
No. 0409-01, slip op. at 2 (Tex. Crim. App. May 15, 2002) (hereinafter Sanchez II). For the
reasons discussed below, we reverse and remand for a new trial. I. Facts and Procedural History

 Appellant was charged in a two count indictment with indecency with a child and
aggravated sexual assault after J.C., the twelve year old victim, told police that appellant
sexually abused him. The record shows J.C. ran away from home and stayed with
appellant in his trailer home from July 17, 1998 until July 22, 1998. On July 22, Detectives
Abel Rodriguez and David Martinez tracked J.C. to appellant's trailer home. Appellant
initially denied knowing J.C.'s whereabouts, but the detectives discovered J.C. hiding in a
hidden compartment of the appellant's bed. 

 What occurred from July 17 through July 22 was hotly contested at trial. According
to J.C.'s testimony and affidavit, he alleged that on several occasions, appellant massaged
J.C.'s buttocks and sexual organ. J.C. also stated that on July 20, 1998, appellant
removed his and J.C.'s underwear and caused his sexual organ to come in contact with
J.C.'s. During cross-examination, J.C. recanted the portion of his affidavit, that stated the
contact between the sexual organs occurred. Further, J.C. admitted that he initially told
a detective that appellant did not touch him in order to protect appellant. 

 Appellant did not dispute that he harbored J.C., but denied improperly touching J.C. 
He sought to introduce evidence of J.C.'s character for truthfulness by calling J.C.'s fifth
grade teacher, Paul Ox, to testify. Ox testified outside the presence of the jury that in his
opinion, J.C. was not an honest child and that J.C. would not tell the truth when confronted
with a situation in which J.C. might get in trouble. The trial court excluded the evidence. 
However, appellant was allowed to cross-examine J.C. about his character for truthfulness. 
He also cross-examined Detective Abel Rodriguez regarding the police report he prepared
after listening to J.C.'s outcry statement. According to appellant, J.C. failed to mention that
appellant had a tattoo on his lower hip, which proved that J.C. did not see appellant
naked. (4) 

 The evidence and the jury charge also focused on the credibility of J.C.'s outcry
statements. Appellant's defense during opening statement and closing argument was that
J.C. was a disturbed child and lied to avoid getting in trouble for running away. The State's
closing argument alleged that appellant was a liar and the physical evidence found at
appellant's trailer home corroborated J.C.'s accusations. The jury charge for indecency
with a child required the State to prove that appellant "engaged in sexual contact with J.C.
. . . by causing [J.C.] to touch the genitals of [appellant]." The jury charge for aggravated
sexual assault required the State to prove that appellant intentionally "cause[d] the sexual
organ of [J.C.] . . . to contact the sexual organ of the [appellant]." The jury then found
appellant guilty on both counts and appeal followed.

 In our original opinion, we disagreed with the trial court's determination that Ox's
testimony was not relevant because "impeachment evidence used for the purpose of
demonstrating a witness' character for truthfulness is generally relevant when the target
witness has testified." Sanchez I, slip op. at 4; see Tex. R. Evid. 608(a). We then
determined that the evidence was admissible under rule 608(a):

Here, J.C. testified, thereby opening the door to an attack on his character
for truthfulness. Ox was prepared to testify that, in his opinion, J.C. was not
a truthful child. Ox would have testified to a general pattern of behavior he
observed over the course of a school year. Such testimony would have
consisted of a synthesis of observations resulting in an opinion, rather than
the recollection of numerous anecdotal instances which support a
conclusion. Thus, the testimony would not have violated rule 608(b), which
prohibits impeachment by specific acts. Finally, Ox would have testified that
he was J.C.'s teacher for most of a school year; an extended period of close
interaction which provides sufficient familiarity to suggest that Ox's opinion
is reliable.


Sanchez I, slip op. at 4 (citations omitted). 

 We then conducted a harm analysis for constitutional error under rule 44.2(a). Tex.
R. App. P. 44.2(a). (5) Because J.C.'s testimony was equivocal, and he was the only person
to testify regarding the specific alleged acts against appellant, we were not convinced
beyond a reasonable doubt that appellant would have been convicted notwithstanding Ox's
testimony. The court of criminal appeals vacated our judgment and directed us to Potier
v. State, which clarified the harmless-error standard that applies to the erroneous exclusion
of evidence a defendant offers. Sanchez II, slip op. at 2 (citing Potier v. State, 68 S.W.3d
at 658). II. Analysis

A. Potier

 In Potier, the defendant was convicted of murder and sentenced to ten years
imprisonment. Potier, 68 S.W.3d at 658. At trial, defendant contended that he acted in
self-defense and attempted to admit testimony of rumors that the victim intended to kill the
defendant on the day of the shooting. Id. According to the defendant, the trial court erred
in excluding the evidence because it "prevented him from effectively arguing that he acted
under a reasonable belief that deadly force was immediately necessary to protect himself
against the victim's attempted use of unlawful deadly force." Id. The First Court of
Appeals held that the trial court erred in excluding the evidence, but found the error
harmless under rule 44.2(b) because the defendant's self-defense claim had been
presented to the jury by other evidence. Id. On appeal to the court of criminal appeals,
the defendant argued the error should have been reviewed under rule 44.2(a) rather than
44.2(b) because the error violated his constitutional right to call witnesses to make his
defense. Id. at 659.

 The court of criminal appeals, after reviewing Supreme Court and other federal 
case law, determined that "[e]rroneous evidentiary rulings rarely rise to the level of denying
the fundamental constitutional rights to present a meaningful defense." Id. at 663. In
doing so, it noted two distinct types of evidentiary rulings that potentially rise to the level
of constitutional error: (1) a state evidentiary rule that categorically and arbitrarily prohibits
the defendant from offering otherwise relevant, reliable evidence vital to the defense; and
(2) a trial court's clearly erroneous ruling excluding otherwise relevant, reliable evidence
that "forms such a vital portion of the case that exclusion effectively precludes the
defendant from presenting a defense." Id. at 665; see also Tiede v. State, 76 S.W.3d 13,
14 (Tex. Crim. App. 2002). 

 The court of criminal appeals determined that Potier's constitutional rights were not
violated because he was allowed to present evidence to support his claim of self defense. 
Potier, 68 S.W.3d at 665. Specifically, the court noted that the defendant testified he was
afraid of the victim, the victim had previously robbed and pistol whipped him, and the victim
threatened to kill the defendant as he advanced toward the defendant just before the
defendant shot the victim. Id. at 665. Under these facts, the court determined that the
exclusion of testimony of the defendant and his neighbor regarding rumors they heard from
people in the neighborhood that the victim intended to kill the defendant on the day in
question, did not rise to the level of constitutional error because their exclusion did not
prevent the defendant from presenting a defense. Id. at 666. In short, the court
determined that the erroneous exclusion of evidence did not violate the defendant's
constitutional rights because the exclusion did not "'significantly undermine fundamental
elements of the accused's defense.'" Id. at 666 (quoting United States v. Scheffer, 523
U.S.303, 315 (1998)). 

 With Potier's reasoning in mind, we now consider whether the erroneous exclusion
of Ox's testimony violated appellant's constitutional rights. 

B. Rule 44.2(a) 

 Appellant argues that the rule 44.2(a) standard applies because Ox's testimony
formed a vital portion of his case in chief, the exclusion of which effectively precluded
counsel from presenting a defense for appellant. Specifically, appellant contends that,
without Ox's testimony, the jury had no way of knowing about J.C.'s penchant for lying. We
disagree.

 The erroneous evidentiary ruling did not prevent appellant from presenting his
defense, that is, J.C. was lying to get himself out of trouble for running away. Appellant
testified he neither exposed himself to nor touched J.C., in stark contrast to J.C.'s
testimony. Appellant also elicited testimony from Rodriguez and Martinez during their
cross-examinations suggesting J.C. was less than truthful: (1) J.C. told Rodriguez appellant
was his friend; and (2) in J.C.'s outcry to Martinez, he never mentioned appellant had a
tattoo on his lower right abdomen. Finally, appellant was able to show numerous
inconsistences in J.C.'s version of events: (1) J.C. claimed no one told him he would be in
trouble if he lied, contrary to what the detectives said; (2) J.C. was cross-examined about
appellant's tattoo; (2) J.C. recanted some of the allegations contained in his affidavit; and
(4) J.C. stated he told one of the detectives appellant never touched him. 

 Under these facts, we find the erroneous evidentiary ruling was not constitutional
error because it did not prevent appellant from presenting the substance of his defense. 
See id. We hold that the erroneous exclusion of Ox's testimony did not trigger rule
44.2(a)'s harm analysis. See Tex. R. App. P. 44.2(a). Accordingly, we now consider
whether the erroneous ruling should be disregarded under rule 44.2(b). See Tex. R. App.
P. 44.2(b).

C. Rule 44.2(b)

 Rule 44.2(b) provides "[a]ny other error, defect, irregularity, or variance that does
not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b). A substantial
right is affected when the error had a substantial and injurious effect or influence in
determining the jury's verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). It is the appellate court's duty to assess harm after a proper review of the record. 
Schutz v. State, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001). The appellate court should
consider everything in the record including: (1) testimony; (2) physical evidence; (3) nature
of the evidence supporting the verdict; (4) character of the error and its relationship to other
evidence; (5) theories of the case the State and defendant have espoused; (6) arguments
to the jury; and (7) relevant voir dire. Id. at 444-45.

 In a prosecution for sexual offenses, the credibility of the complainant is an
important, (6) but not dispositive factor. Id. at 446. Here, the fact-finder was faced with a
"swearing match" between J.C. and appellant. See Wheeler v. State, 67 S.W.3d 879, 888
(Tex. Crim. App. 2002). Notably, J.C.'s testimony was equivocal at best. Outside from
J.C.'s statements in and out of court, there was no evidence appellant improperly touched
J.C.

 Further, the State's and appellant's opening and closing arguments focused on the
credibility of both appellant and J.C. Appellant argued in his opening statement that J.C.
was an emotionally disturbed child who manipulated the situation to avoid getting in
trouble. In closing argument, appellant pointed to the inconsistences in J.C.'s testimony
and asked the jury to weigh the credibility of the witnesses in light of the physical evidence. 
 The State's opening argument focused on the testimony that would be offered by
the witnesses at trial. During closing argument, it argued that the essential elements of
each offense were established by J.C.'s testimony. It then argued appellant lied about
having J.C. stay with him in the trailer home, lied to police, and lied to the land lady of the
trailer park about his marital status. The State's closing argument to the jury also stated
that appellant "has repeatedly lied and will not own up to what he's done because he has
a great deal invested in hiding the truth from you." 

 Based on the focus of the State's and appellant's opening statements and closing
arguments, lack of evidence outside of J.C.'s statements establishing the improper contact,
and J.C.'s equivocal testimony at trial, the erroneous exclusion of Ox's testimony had a
substantial and injurious effect on the verdict. See King, 953 S.W.2d at 271. Here,
appellant questioned Ox outside the presence of the jury after William Calloway, J.C.'s
grandfather testified that J.C. was an honest child. Ox, who has a master's degree in child
guidance and counseling, a certificate for teaching elementary school, and twenty years
teaching experience testified that J.C. had behavioral problems at school. Specifically, Ox
testified that "[w]hen confronted often about behaviors, [J.C.] was quite often in denial and
did not always tell the truth." Ox also stated appellant was not an honest child. 
Accordingly, we find the error in excluding Ox's testimony was harmful under rule 44.2(b). 
See Schutz, 63 S.W.3d at 444. 

 Appellant's first point is sustained. 

III. Conclusion

 We hold that the erroneous exclusion of Ox's testimony was harmful error that
affected appellant's substantial rights. Accordingly, we reverse the trial court's judgment
and remand this case to the trial court for a new trial. 

 

 


 

 Rogelio Valdez,

 Chief Justice


Do not publish. 

TEX .R. APP. P. 47.2(b).


Opinion delivered and filed

this 15th day of July, 2004.

 
1. Tex. Pen. Code Ann. § 21.11(a)(2)(A) (Vernon 1998).
2. Tex. Pen. Code Ann. § 22.021(a)(1)(B)(iii) (Vernon 1998).
3. The State requested discretionary review on three issues: (1) this Court's opinion
failed to address whether appellant properly preserved error and failed to show how the
trial court abused its discretion; (2) appellant failed to show the trial court abused its
discretion in excluding evidence under Texas Rule of Evidence 608; and (3) whether this
Court conducted a proper harm analysis under Texas Rule of Appellate Procedure 44.2. 
The court of criminal appeals refused the first two grounds and vacated our judgment
under the third ground. 
4. The record is not clear if appellant had this tattoo before the incidents in question. 

5. Rule 44.2(a) provides:


If the appellate record in a criminal case reveals constitutional error that is
subject to harmless error review, the court of appeals must reverse a
judgment of conviction or punishment unless the court determines beyond
a reasonable doubt that the error did not contribute to the conviction or
punishment. 


Tex. R. App. P. 44.2(a).
6. The court of criminal appeals has recognized that in prosecutions for sexual
offenses, a successful conviction "'often depends primarily on whether the jury believes the
complainant, turning the trial into a swearing match between the complainant and
defendant.'" Wheeler v. State, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002) (quoting
Boutwell v. State, 719 S.W.2d 164, 177-79 (Tex. Crim. App. 1985)).