IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-74,393






IRVING ALVIN DAVIS, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM EL PASO COUNTY






 Keller, P.J., filed a dissenting opinion in which Keasler and Hervey,
JJ., joined. 


 The Court reverses appellant's conviction on his tenth point of error, claiming that the trial court
refused to allow appellant's punishment phase witnesses to testify that appellant did not constitute a future
danger to society. Although I agree that the trial court should have permitted the testimony, I would hold
that the trial court's errors in this regard were harmless. The Court does not really explain how appellant
was harmed but simply concludes that the trial court's errors show "a degree of harm intolerable in a death-penalty case." But that conclusion, aside from being unsupported, makes little sense to me. The harm
analysis is the same for error in death and non-death cases. (1) 

 I also think that the Court's analysis of appellant's ninth point of error, regarding the sufficiency of
the evidence of future dangerousness, understates the strength of the evidence against appellant. Because
the strength of the State's evidence of future dangerousness is relevant to a harm analysis with respect to
the trial court's exclusion of evidence, I will first conduct a more complete sufficiency review before turning
to a harm analysis under point of error ten.

1. Legal Sufficiency


 In his ninth point of error, appellant claims the evidence is legally insufficient to support the jury's
finding that he would pose a future danger to society. In reviewing the sufficiency of the evidence at
punishment, this Court looks at the evidence in the light most favorable to the verdict to determine whether
any rational trier of fact could have concluded beyond a reasonable doubt that appellant would probably
commit criminal acts of violence that would constitute a continuing threat to society. (2) The circumstances
of the crime alone, if severe enough, can support an affirmative finding to the future dangerousness special
issue. (3)

 The circumstances of the offense showed a brutal crime. In addition to being raped, the victim
suffered a severe brain injury from blunt force trauma, was strangled, and suffered a ruptured pulmonary
artery. The medical examiner testified that any one of the latter three injuries was sufficient to cause death. 
Moreover, appellant's act of cutting off the victim's fingertips was barbarous, and showed forethought in
covering up the crime. (4) Further, appellant was convicted of three charges of possession of stolen goods
as an adult, was suspended from school as a juvenile for possession of marijuana and assault, and became
violent on numerous occasions. Episodes of bad conduct included threatening his brother with a knife,
possessing a knife at a nightclub, locking himself in a bedroom with a girl who was passed out from drinking
too much, throwing a stool in a bar, and striking an acquaintance in the chest for no reason and pushing that
acquaintance's head down while he tried to tie his shoe. This last incident occurred just hours before
appellant murdered the victim. Finally, Dr. Edward Brown Gripon, a psychiatrist, testified that a
hypothetical person with appellant's background would constitute a continuing threat to society. A rational
trier of fact could have found that appellant would probably commit criminal acts of violence that would
constitute a continuing threat to society. 

2. Lay Testimony


 I would hold that the trial court's errors in preventing appellant's lay witnesses from specifically
testifying, "Irving Davis would not present a future danger to society," were harmless. 

 In Potier v. State, we held that the improper exclusion of evidence is unconstitutional only if it
significantly undermines the fundamental elements of the accused's defense. (5) When the accused is able to
present the substance of his defense, the proper harm analysis is conducted under Texas Rule of Appellate
Procedure 44.2(b), which states that any non-constitutional error that does not affect a substantial right
must be disregarded. (6) An error affects the defendant's substantial rights for Rule 44.2(b) purposes when
the error has "a substantial and injurious effect or influence in determining the jury's verdict." (7) Or stated
another way, an error does not affect substantial rights if the appellate court "has fair assurance that the
error did not influence the jury, or had but a slight effect." (8) 

 Although appellant's witnesses were not allowed to give their ultimate opinion on whether appellant
posed a future danger to society, they were able to give opinions as to his non-violent character and their
observations supporting those opinions. Carolyn Brookshire was allowed to testify that she had known
appellant for four to five years and that he was friends with her son, Corey. She related that appellant was
very polite and not aggressive. Corey Brookshire testified that appellant was a family friend he had known
for five years. He described appellant as kind-hearted and friendly. He stated further that appellant had
never been violent toward him and was a gentleman towards women. Margaret Sanderson testified that
appellant was a neighbor and friend of the family who was helpful and respectful. She also stated that the
only time she had seen appellant violent was during a fight with his brother and that the fight was nothing
more than normal sibling rivalry. Gail Pylant testified that she was the assistant principal where appellant
attended high school. She related that appellant was very respectful and did not exhibit any violent
tendencies. Michael Sanderson, Jr. testified that he and appellant had been friends and neighbors for eight
years. Sanderson described appellant as timid, respectful of his elders, and non-violent. Clare
Zawistowski testified that she was the choral director at the high school appellant attended and that
appellant was a choir member for two years. She stated that during that time, appellant was respectful and
got along with his peers. She went on to say that she never saw him become violent and that he treated
women no differently than he treated men. Amanda Sanderson testified that she had known appellant for
ten years and he was like a brother to her. She described appellant as protective and very "gentleman-like." She also stated that she had never seen appellant act aggressively or violently. Carol Davis,
appellant's mother, testified that appellant was never violent and was very special to her. Bryan Stinson
testified that appellant was his best friend and that he had never seen appellant act violently. Star Stinson
testified that appellant was friends with her sons and that she had known him for seven or eight years. She
related that appellant was helpful and had never been violent or aggressive in her presence. Defense
counsel asked eight of these witnesses whether appellant's capital murder conviction changed their opinion
of him. (9) Six gave an unqualified "no" answer, while two gave a qualified answer. (10) 

 In the present case, the trial court's limitation of the testimony of appellant's lay witnesses did not
rise to the level of unconstitutionality because it did not deprive the defendant of the substance of his
defense. The testimony that was admitted did serve to present the defendant's position that he was not
violent and therefore was not a future danger to society. The remaining question is whether the trial court's
ruling affected the defendant's substantial rights. I would hold that it did not. 

 In one important respect, the present case is similar to Schutz v. State. (11) In Schutz, the trial court
erred in admitting the ultimate opinion of two expert witnesses regarding whether the complaining witness
was manipulated into making or was fantasizing sexual assault allegations. (12) However, the expert witnesses
had given permissible testimony concerning whether the complainant exhibited traits associated with
manipulation or fantasy. (13) Under the circumstances, we found that the jury could have reasonably
predicted what the experts' ultimate conclusions about the complainant's credibility would be, and
therefore, "the jury was less likely to be improperly influenced by an explicit statement of what was already
implicit in the testimony." (14) While the present case involves the improper exclusion of evidence rather than
its improper admission, Schutz's reasoning is relevant here. Although the jury did not hear the ultimate
conclusions of the defense lay witnesses regarding appellant's future dangerousness, the evidence it did hear
lends itself to the conclusion that the witnesses did not believe appellant was a future danger. The witnesses
did testify to appellant's non-violent nature, and the defense elicited from most of them that the conviction
for capital murder did not change their opinion of him.

 Moreover, there is very little likelihood that the jury would place much weight on the general
opinion of family and friends that appellant did not constitute a future danger. Appellant's crime was an
entirely unprovoked rape-murder of an acquaintance, and appellant showed foresight in concealing
evidence by cutting off the victim's fingertips. 

 Also, on cross-examination, a few of these witnesses admitted to not knowing about significant
activities engaged in by appellant. Carolyn Brookshire testified that she did not know what kind of activities
appellant was engaged in when he was not around her. Corey Brookshire admitted that he was unaware
of appellant's school disciplinary problems, his possession of marijuana, and his three misdemeanor
convictions. Zawistowski acknowledged that she was unaware of appellant's school disciplinary problems
and his conviction for possession of stolen goods. 

 And as discussed earlier in this opinion, appellant had committed a number of prior violent acts,
including one that was possibly sexual in nature. I am confident the loss of the slight probative value the
excluded testimony would have added to the defense did not have a substantial and injurious effect or
influence on the jury's punishment verdict. Thus, I would overrule point of error ten and affirm the
judgment of the trial court.


Filed: June 13, 2007

Do Not Publish
1. Tex. R. App. P. 44.2.
2. Jackson v. Virginia, 443 U.S. 307 (1979); Allridge v. State, 850 S.W.2d 471 (Tex. Crim.
App. 1991), cert. denied, 510 U.S. 831 (1993). 
3. Sonnier v. State, 913 S.W.2d 511, 517 (Tex. Crim. App. 1996).
4. See Williams v. State, 958 S.W.2d 186, 191 (Tex. Crim. App. 1997)(parking two streets
down from victim's house to evade detection).
5. Potier v. State, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002).
6. Id.; Tex. R. App. P. 44.2(b). 
7. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)(citing Kotteakos v. United
States, 328 U.S. 750, 776 (1946)).
8. Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).
9. This question was directed to Carolyn Brookshire, Corey Brookshire, Margaret Sanderson,
Michael Sanderson, Jr., Claire Zawistowski, Amanda Sanderson, Bryan Stinson, and Star Stinson.
10. In response to the question, Zawistowski testified, "Not the Irving I knew, no." Star Stinson
responded to the question by saying, "I dislike what has happened, but I care very much, though, for
him." On the bill of exception, Zawistowski's response to the future dangerousness question was
similarly qualified.
11. 63 S.W.3d 442 (Tex. Crim. App. 2001).
12. Id. at 443.
13. Id. at 445.
14. Id. at 446.