# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00719-CR

**Michael Ord, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. D-1-DC-09-300565, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Michael Ord guilty of intentionally or knowingly causing serious bodily injury to a child and assessed punishment at fifteen years' imprisonment. *See* Tex. Penal Code Ann. § 22.04(a)(1), (e) (West Supp. 2010). In two points of error, appellant contends that the trial court reversibly erred by admitting evidence of an extraneous offense and by excluding evidence relevant to appellant's mental state. We overrule these contentions and affirm the conviction.

On March 4, 2009, appellant was living in an Austin apartment with Vanessa Livesay and her two-year-old son, C.R. To save the cost of day care, appellant stayed home that day to watch C.R. while Livesay went to work. It was undisputed that C.R. was in normal good health when Livesay left the apartment that morning.

At about 11:15 a.m., Livesay returned to the apartment on her lunch break. When she arrived, the front door was locked and she could hear appellant shouting at C.R. to "stand up." Appellant opened the door in response to Livesay's knock. C.R. was sitting on the floor in the hallway, crying and naked. Appellant told Livesay that he was angry with C.R. because the boy had torn up his diaper. Livesay saw the torn diaper on the floor. Livesay picked up C.R. and took him to the bedroom to put on a fresh diaper. After doing this, she told C.R. to come with her to the living room, but the boy would not move. It was then that Livesay noticed that C.R.'s right leg was swollen. She also saw blood on C.R.'s face and on his shirt, and a blood stain would later be found on the carpet. When Livesay picked up C.R. a second time, she noticed a "clicking" noise in his leg. Immediately thereafter, appellant and Livesay took C.R. to the emergency room at Brackenridge Hospital.

An X-ray at the emergency room disclosed that C.R.'s leg was broken, and the child was transferred to Dell Children's Hospital for treatment. The treating physician was Dr. Jay Shapiro, a pediatric orthopedic surgeon. Shapiro testified that C.R. had a spiral fracture of his right femur. He said that the femur is the largest bone in the body and that significant force, such as that produced in an automobile accident, is required to cause such an injury. The doctor answered affirmatively when asked if a reasonable person would know that such force was likely to cause a serious injury.

When first questioned at the hospital, appellant said that he had been in the kitchen preparing lunch when he heard a thud in the living room. He ran to the living room and found that C.R. had fallen out of a chair. He picked the child up, but the boy was unable to stand and again fell

2

to the floor, causing his nose to bleed. Appellant later changed his story. He told investigators that he and C.R. had been roughhousing: appellant was lifting the child and throwing him on the bed. At one point, C.R. fell to the floor, got up, and then fell to the floor again. In his trial testimony, appellant admitted that these early statements were untruthful.

Appellant testified that on the day in question, he was heating food for lunch when C.R. entered the kitchen and reached for the burner on the stove. Appellant said that C.R. knew better than to do this because the child had burned his thumb on the stove a few days earlier. Appellant slapped the child's hand and ordered him out of the kitchen. Shortly thereafter, appellant heard C.R. playing with "DVD's and stuff" in the living room. When appellant admonished him and took the television remote control from his hand, C.R. slapped appellant on the leg. Appellant testified that this angered him. He continued, "I grabbed him by his leg, his right leg and his right—left arm and I picked him up. I was going to set him on the bed, and when I picked him up, he twisted his body in my hands like he was trying to get away and started to fall backwards." Appellant testified, "I jerked him (indicating) back upright and, I mean, he started crying at that point." Appellant said he did not know at the time whether C.R.'s feelings were hurt or if the child was actually injured. Appellant acknowledged that he had "lost it" and that he had tossed C.R. onto the bed "pretty roughly."

Appellant testified that as he was leaving the bedroom, he turned and saw C.R. tearing up his diaper. This also angered appellant, and he responded by removing the diaper and spanking C.R. "harder than it needed to be." This, said appellant, explained the red handprint on C.R.'s buttock that had been observed at the hospital. Appellant testified that when he released C.R. after

3

spanking him, the boy fell to the floor and bloodied his nose. Appellant was still angry and thought that C.R. was just being difficult. It was at this point, as he was shouting at C.R. to stand up, that Livesay returned to the apartment for lunch.

Appellant testified that he had no idea that C.R.'s leg was broken until they were told at the hospital. Appellant acknowledged that he had been frustrated and angry and that he was responsible for C.R.'s injuries, but he insisted that he did not intend to hurt C.R. Appellant also testified that he did not know that the manner in which he had handled the boy was reasonably certain to cause serious bodily injury.

In his first point of error, appellant contends that the trial court erred by admitting testimony implying that he had intentionally burned C.R.'s thumb a few days before the incident for which he was on trial. The testimony at issue was adduced by the State during its questioning of Livesay:

> Q. About a week prior to the 4th of March that we've been talking about, did [C.R.] sustain an injury?
>
> A. Yes.
>
> Q. Were you present in the room when he sustained the injury?
>
> A. No.
>
> Q. Who was present in the room when he sustained the injury?
>
> A. Michael was.
>
> Q. And tell the jury what part of [C.R.'s] body was injured.
>
> A. His finger. I believe it was his thumb.

4

. . .

Q. And what type of injury was it?

A. It was a burn.

Q. Was [C.R.] able to explain what happened?

A. No.

Q. Did Michael explain what happened?

A. Yes.

Q. What did Michael claim had happened?

A. [C.R.] had reached up and accidentally touched the burner with his finger.

Q. And you keep saying finger. Is it the thumb or a finger?

A. With his thumb.

Q. With his thumb. And you told defense counsel that you had never seen an injury—or Michael hurt [C.R.], but you didn't see the injury on the 4th either, correct?

A. I didn't notice anything was there, no.

Q. But you didn't see what he had done?

A. No.

Q. He just told you what he had done?

A. Yes.

Q. You didn't see that one either, right?

A. No.

5

Before permitting the State to offer this testimony, the trial court considered its admissibility at a hearing outside the jury's presence. Defense counsel objected that the testimony had no relevance other than character conformity and that any proper relevance it might have was outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403, 404(b). Counsel further objected that "there's been no evidence put forth . . . to show that Michael Ord caused this injury and certainly no evidence that he knowingly or intentionally caused the injury." Counsel asserted that the testimony "would invite the jury to speculate about this extraneous act, this extraneous event, and speculate that perhaps he had caused it, perhaps he had knowingly or intentionally caused it, and then use that evidence to decide whether or not he had knowingly or intentionally caused the injuries that are alleged in this case." The State replied that the testimony "goes to show that . . . this child seems to only be injured when he is in the defendant's care; and that this goes to the intent, to show the intent on . . . the 4th, these other acts and these other things that have happened with this child."

Responding to these arguments, the court said, "Maybe I'm looking at it a little differently than the two of you, because I don't necessarily view it as a bad act or an extraneous act." The court continued, "I mean, it's not unthinkable that a two- or three-year-old would touch a burner when they are standing there by you. I don't necessarily see it as [an] indication that he was guilty of this offense because this incident occurred." The court announced that it would nevertheless allow the challenged testimony to "prove the nature of their contact within a recent time to the events." The court added, "So I find the evidence to be relevant and it does expand upon the nature of the relationship between the two [appellant and C.R.], so I find it probative to both sides, one way or another, that would be left for you-all to convince the jury of which of you is correct."

6

The decision to admit or exclude evidence is committed to the trial court's discretion, and its decision should not be disturbed on appeal absent a clear abuse of that discretion. *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991) (op. on reh'g). Even if error in the admission of evidence is shown, the error must be disregarded unless the defendant's substantial rights were affected. Tex. R. App. P. 44.2(b). We will not reverse a conviction for nonconstitutional error if, after examining the record as a whole, we have fair assurance that the error did not influence the jury or had only a slight influence. *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001).

Appellant notes that his mental state was the only contested issue at the guilt stage of the trial. Citing his own testimony, appellant urges that neither his conduct nor the circumstances surrounding that conduct support an inference that he intentionally or knowingly injured C.R. on the day in question. Thus, appellant argues that there is a strong probability that the burn incident caused the jury to find that he acted intentionally or knowingly, rather than with criminal negligence. Appellant's argument assumes the truth of his testimony, which the jury was not required to believe, and overlooks the testimony of the treating physician. Shapiro testified to the large amount of force required to produce a spiral fracture of the femur. He also testified that a reasonable person would know that the force required to produce such a fracture was likely to cause serious injury, an inference the jury reasonably could have drawn even in the absence of the doctor's testimony. Appellant's argument also fails to account for the blood found on C.R.'s shirt and on the carpet.

Moreover, the evidence concerning the burn incident was not particularly compelling or prejudicial. In response to questions by defense counsel, Livesay described the injury to C.R.'s thumb as "very small, very minor." A photograph of C.R.'s thumb taken at the hospital and admitted

7

in evidence tends to confirm this. Although the State called several medical witnesses, none of them testified that the burn was a significant injury or that it appeared to have been deliberately inflicted. And as the trial court observed, it was not improbable that a two-year-old child would reach up and touch a hot burner or hot pot on a stove. In fact, the only reference to the burn after Livesay testified was in appellant's own testimony, when he recounted the incident to explain why he had slapped C.R.'s hand when the boy again reached for the stove. The burn was not mentioned during closing arguments.

Having reviewed the record, we have a fair assurance that the admission of Livesay's testimony describing the burn on C.R.'s thumb, if error, did not affect appellant's substantial rights. Given the severity of the injury to C.R.'s leg, we conclude that the evidence regarding the relatively insignificant burn on his thumb had little or no influence on the jury's finding that appellant acted knowingly or intentionally. Point of error one is overruled.

In point of error two, appellant contends that the trial court erred by excluding defensive testimony relevant to his culpable mental state. The witness in question was his mother, Nancy Dean. She testified that when appellant was six years old, he was diagnosed with attention deficit hyperactivity disorder. Dean, a registered nurse, said that appellant was successfully treated with prescription medication until adolescence, when the drugs stopped having an effect. When defense counsel sought to question Dean further about this subject, the State objected that "the ADHD has [no] relevance to whether or not [appellant] injured this child intentionally." Asked to explain the relevance, defense counsel replied, "It has to do with his ability to process information." The court responded, "That would be at a different phase of the trial," and sustained the State's objection.

8

Error cannot be predicated on a ruling that excludes evidence unless a substantial right of the party is affected and the substance of the evidence was made known to the court by offer of proof or was apparent from the context. Tex. R. Evid. 103(a)(2). An offer of proof may be made in question and answer form or by a concise statement by counsel. *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009). If in statement form, the proffer must include a reasonably specific summary of the evidence and explain its relevance, unless that is otherwise apparent. *Id*. at 889-90. In this case, appellant did not ask to make an offer of proof in question and answer form, and his only statement to the court was that the proffered testimony "has to do with his ability to process information."

The defendant in *Mays*, like appellant, complained on appeal that he was denied the opportunity to offer evidence that he was incapable of forming the required culpable mental state. *Id*. at 886. The only offer of proof was defense counsel's statement to the court, "[T]he evidence in this case, were we allowed to present it, would show that because of mental and medical impairment, the defendant lacked, at the time of the alleged commission of this crime, the ability to form the requisites of the mental state required of intentional and knowing." *Id*. at 891. The court of criminal appeals held that "this sort of summary, in the most general and cursory terms, without any of the meat of the actual evidence, will not suffice to preserve error." *Id*.

Appellant's statement to the trial court in the cause before us was even less informative than the statement held insufficient to preserve error in *Mays*. Even if appellant's ability to "process information" was relevant to appellant's defense, we have no basis in the record for determining whether Dean's testimony actually "[had] to do with" that subject or whether the

9

exclusion of her testimony prejudiced the defense. *See id*. We conclude that appellant failed to preserve this contention for review. Point of error two is overruled.

The judgment of conviction is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:  December 1, 2010

Do Not Publish