

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NOS. PD-0850-21, 0853-21 & 0854-21

### KENNIE LEWIS COOK, JR., Appellant

### v.

### THE STATE OF TEXAS, Appellee

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE SIXTH COURT OF APPEALS
## CASS COUNTY

MCCLURE, J., delivered the opinion of the court in which KELLER, P.J., HERVEY, RICHARDSON, YEARY, NEWELL, and SLAUGHTER, JJ., joined. KEEL, J., concurred. WALKER, J., filed a dissenting opinion.

## O P I N I O N

Kennie Lewis Cook, Jr., Appellant, was convicted of aggravated sexual assault of a child. In this opinion, we review whether the trial court erred in admitting an officer's direct opinion on the complainant's credibility which harmed

Appellant. Because we disagree that Appellant was harmed by the admission, we sustain the State's third ground asserting that the court of appeals erred when it found reversible error.

## BACKGROUND

The complainant, seven-year-old C.S., often went to church with his great-grandmother, Gladys. Appellant was a family friend and served as music director and organist, in addition to serving in other capacities at the church. In the summer of 2018, C.S.'s mother, Felicia, testified that she saw C.S. sucking his brother's penis. When questioned, C.S. told her that Appellant had done the same act to him. Felicia had grown up with Appellant and had allowed C.S. to be around him unsupervised. She also accepted gifts from him for C.S.

According to C.S., when Appellant and C.S. were in Gladys's home after church, Appellant inserted his finger in C.S.'s rectum, sucked on his penis, and made him suck on Appellant's penis. In response to his outcry, Felicia took C.S. to the church to tell Gladys's other grandson (C.S.'s cousin), DeShadrick, about the abuse, but C.S. then denied Appellant had molested him.

The outcry and ensuing investigation prompted Gladys to record a video in which she repeatedly told C.S. that Appellant loved and missed him. Asked leading questions in the video, C.S. denied the allegations. In the video, C.S. instead reported that Appellant only spanked him, and that his mother "started [the allegations against

Appellant]." The recording also captures Gladys asking C.S. if anyone "messed" with him, to which C.S. responded that his stepdad Tray had. The State's case, and Appellant's opposing arguments centered on whether C.S. was telling the truth to his mother and the police, or to his grandmother Gladys on the recording.

The issue of credibility was evident as early as voir dire. The State initially asked venirepersons whether they agree that children lie to get out of trouble or lie for no reason. Appellant followed the State's voir dire inquiries with his own rendition: "Do kids always tell the truth?" and "Do you believe that a child can be coached or manipulated into saying certain things?"

At the start of trial, the State's opening argument promptly addressed C.S.'s truthfulness noting that C.S. has "no motive to lie," and is "not a kid who's going to lie." Previewing Felicia's testimony, the State argued that she also "has no motive to lie," though "the defense will try to smear her and call her a liar in every which way they can." With respect to Gladys's testimony, the State openly admitted it was not sure what she would say, because she refused to meet with prosecutors prior to trial.

The State called C.S. as its first witness and elicited testimony recounting the abuse he suffered at Gladys's home. Specifically, that Appellant "sucked [C.S.'s] little thing," that Appellant made C.S. "suck [Appellant's] little thing," and Appellant "put his finger in [C.S.'s] butt."

The State's next witness was Felicia, C.S.'s mother, who narrated her discovery of the abuse and her response to it, including taking C.S. to talk to the police and a counselor. On cross-examination, Appellant sought to impeach her with reputation testimony from family members who claimed she is a "compulsive liar" and "manipulator." Appellant then asked Felicia whether she coached C.S. to make allegations against Appellant, whether she is aware that family members do not believe the allegations, and whether her husband Tray ever abused C.S.

The State then called Gladys Coleman, who almost immediately presented as a hostile witness. Gladys testified she did not believe the allegations because she found them inconsistent with Appellant's character and because the incidents allegedly occurred in her home when she did not believe Appellant would have had such opportunity. On cross-examination, Appellant elicited testimony that Gladys heard C.S. make inconsistent statements about the abuse.

The State then called Sergeant Jimma Hicks of the Atlanta Police Department. Sergeant Hicks testified that he arrested Appellant after the Children's Advocacy Center interview, in which C.S. stated Appellant penetrated his rectum with his finger. When Hicks was asked why he thought the interview was a sufficient basis on which to proceed, the following exchange occurred:

> Hicks: That victim, I felt like that victim, of his age, gave a credible statement that—

Counsel: Objection, Your Honor. He's not qualified to say that the victim's statement is credible. Additionally, he's not qualified to go into the details of victim's statement.

Court: Any response?

State: This is the basis for his following actions. It's just what formed his basis for continuing the case, Your Honor.

Counsel: Judge, he can't pass on the credibility of a witness.

Court: The jury will be able to decide the credibility of the witness. That'll be sustained as to credibility. You may continue.

State: Did you think the child was lying?

Hicks: No.

Counsel: Objection, Your Honor.

Court: Overruled.

Counsel: That's a comment on the credibility of the witness.

Court: Overruled.

Jessica Kelley of the Children's Advocacy Center interviewed C.S. and was called as the State's next witness. She detailed the three allegations of abuse C.S. made and testified she saw no signs of coaching, deception, or manipulation from or directed to C.S. With respect to Gladys's recorded statement, Kelley opined that the questions Gladys asked likely influenced C.S.'s answers. She testified that not only were the questions improper, but they could have tainted future recollections of the abuse. On cross-examination, Appellant primarily focused on Kelley's alignment

with law enforcement, suggesting that Kelley's interview was biased and that it sought answers confirming law enforcement's suspicions rather than taking a neutral approach.

C.S.'s counselor, Kaleigh Dodson, was called next by the State and testified similarly. She found C.S. showed signs of trauma. Dodson opined C.S. was developmentally delayed and would not have been able to sustain deception over time given his intellectual age. Cross-examination prompted Dodson to agree that she does not have knowledge of what actually occurred and can only speak to the events relayed to her by C.S.

Appellant testified in his defense, both to his innocence and good intentions in spending time and money on C.S. He further testified he believed the allegations against him were manufactured.

Appellant then called family members of Felicia, C.S., and Gladys who testified that Appellant was upstanding, honest, and lacked the opportunity to abuse C.S. Family members further testified that they suspected Felicia's husband, Tray, had abused C.S., although Tray was incarcerated at the time of the alleged incident. Still, Gladys, DeShadrick, and two other family members opined that Felicia coached C.S. to make up claims against Appellant because she was a liar, schemer, and manipulator.

In rebuttal, the State presented testimony from C.S.'s aunt and grandmother who each testified, without objection, to their belief the child was telling the truth and gave possible explanations for Gladys's denial of the outcry. These rebuttal witnesses signaled the close of evidence. Both renditions of closing argument highlighted inconsistencies in the testimony and the respective parties' credibility.

Appellant was convicted by a jury of three separate aggravated sexual assaults and sentenced to forty (40) years on each count. TEX. PENAL CODE § 22.021(a)(1). The trial court ordered two of the convictions to run concurrently, with the remaining count to run consecutively.

## APPEAL

On appeal, Appellant argued: (1) the evidence was legally insufficient to support his convictions for aggravated sexual assault, (2) the State violated Equal Protection by striking the only black venireperson within the strike zone, (3) the trial court erred by permitting an officer to testify to his belief that C.S.'s outcry was truthful, (4) the trial court erred by permitting testimony from a State's rebuttal witness in violation of the witness-sequestration rule, and, (5) the trial court erred by assessing court costs in all three causes.

The Sixth Court of Appeals found the evidence legally sufficient to support the jury's guilty verdict, but found the trial court erred in admitting Hicks's opinion on whether C.S. was testifying truthfully. The court relied on *Yount v. State*, wherein

this Court reasoned that "a direct opinion as to the truthfulness of a witness 'crosses the line' under Rule 702 because it does more than 'assist the trier of fact to understand the evidence or to determine a fact in issue'; it *decides* an issue *for* the jury." 872 S.W.2d at 706, 709 (Tex. Crim. App. 1993) (emphasis in original). The court then concluded that Appellant was harmed by such testimony. It reversed the trial court's judgments and remanded the case for a new trial.[1]

We granted the State Prosecuting Attorney's petition for discretionary review on three grounds:

> (1) Does defense-elicited testimony that the victim's allegations of sexual abuse are lies and the result of manipulation and coaching justify the admission of lay, rebuttal testimony from an officer that the victim's allegations were credible?
>
> (2) If the officer's brief victim-credibility testimony was not proper rebuttal, was it harmless error because other direct credibility testimony was later admitted without objection as proper rebuttal evidence?
>
> (3) If the officer's brief victim-credibility testimony was not proper rebuttal, was it harmless error under a traditional harm analysis?

This case can be resolved on harm. Finding our harm analysis dispositive, we need not address whether the trial court erred in admitting the officer's testimony.

## ANALYSIS

*Admission of Officer Hicks's testimony did not harm Appellant's substantial rights*

---

[1] Because the court of appeals sustained this point of error and reversed judgments, it did not address the remaining points of error. *See* TEX. R. APP. P. 47.1.

This case turned on the credibility of the complainant. Like many sexual abuse cases, there is no physical evidence or eyewitness testimony aside from that of the complainant. Due to the volume of witnesses testifying to the credibility of the parties, we must ask whether the introduction of Officer Hicks's testimony affected Appellant's substantial rights. *See Schutz v. State*, 63 S.W.3d 442, 444–46 (Tex. Crim. App. 2001). We will not overturn a conviction if, after examining the record as a whole, we have fair assurance that the error did not influence the jury or did so only slightly. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

While the court below properly cited the standard for non-constitutional harm and the harm factors, it misapplied them. Specifically, the majority failed to consider testimony that was admitted without objection regarding credibility and accurately assess whether the State emphasized Hicks's statement during closing arguments.

Harm analysis factors

Non-constitutional errors require reversal only if they affect an appellant's substantial rights—*i.e.*, when they have a substantial and injurious effect or influence in determining the jury's verdict. TEX. R. APP. P. 44.2(b); *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008). In making this determination, the following nonexclusive factors are considered: the character of the alleged error and how it might be considered in connection with other evidence; the nature of the evidence supporting the verdict; the existence and degree of additional evidence

indicating guilt; whether the State emphasized the complained-of error; the trial court's instructions; the theory of the case; and, relevant voir dire. *Motilla*, 78 S.W.3d at 356–58; *Schutz*, 63 S.W.3d at 444-45.

Applying the harm factors

We find the error in the admission of Hicks's direct opinion testimony on C.S.'s credibility had slight—if any—influence on the jury's verdict.

First, Officer Hicks responded to the question "Did you think the child is lying?" with a concise "No" answer. This was a one-word response contained in a multi-day, multiple-witness trial which amounted to a passing comment that was not repeated. Further, a reasonable juror would assume that an investigating officer believes the victim during the course of the investigation. Otherwise, the officer would not have found probable cause to make an arrest.

Second, immediately before the question, the trial judge sustained an objection and stated "The jury will be able to decide the credibility of the witness. That'll be sustained as to credibility." The jury was aware that credibility was their determination to make.

Third, the State did not emphasize or mention the objected-to portion of Hicks's testimony in its closing argument. *See, e.g., Wilson v. State*, 90 S.W.3d 391, 394 (Tex. App.—Dallas 2002, no pet.) (finding error was harmless in part because, "[d]uring closing arguments, the State emphasized to the jurors that they were the

judges of [the complainant's] credibility and never referred to [the expert's] testimony about the percentage of children who lie about being sexually abused.").

Fourth, the jury charge in this case instructed the jury that it was the exclusive judge "of the credibility of the witnesses and the weight to be given their testimony."

Fifth, considering the nature and strength of evidence supporting the verdict, we note the weight of the evidence of Appellant's guilt:

- The forensic examiner testified she did not see evidence of coaching or manipulation.

- C.S.'s counselor testified that C.S. did not exhibit signs of being coached or manipulated and that his young age would prevent him from being deceptive for over seven months (signaling C.S.'s capacity for truthfulness).

- C.S. testified in detail about the abuse.

- C.S.'s outcry statements supported his testimony.

- C.S.'s actions towards his brother and other children was demonstrative of sexual abuse (testimony that C.S. "sucked [brother's] little thing" and had touched girls inappropriately at school).

- Appellant's testimony that C.S. spent two nights at Appellant's apartment, unsupervised, where he slept with Appellant in his bed.

- C.S.'s aunt and maternal grandmother testified that the victim was credible.

The State's case lacked any corroborating physical evidence and hinged on the credibility of the parties. C.S.'s and his mother's credibility were at the forefront of the dispute. Considering the substantial amount of credibility evidence presented at trial, Officer Hicks's statement is minimal in comparison to the other evidence regarding the credibility of the complainant.

Also to be considered is the substantially-similar testimony that was proffered without objection. The erroneous admission of evidence "will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling. This rule applies whether the other evidence was introduced by the defendant or the State." *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

In rebuttal after Appellant rested, the State offered additional lay testimony on the victim's credibility.[2] Latasha Dia Andrews, the victim's aunt, testified that C.S., based on her personal knowledge, would not lie about something as "serious

---

[2] Unlike Officer Hicks, the victim's aunt and materal grandmother were proper rebuttal witnesses because they have personal knowledge of the child's truthful character. Neither witness's testimony was objected to on the basis of credibility. Instead, Appellant objected to the rebuttal testimony based on Rule 614 of the Texas Rules of Evidence, the witness sequestration rule, and speculation. These objections did not preserve any complaint as to credibility. Further, the trial court overruled both.

as this." She stated she believed the credibility of the accusations and did not think he had been coached.

> Prosecutor: Do you think [C.S.], based on your personal knowledge of him, do you think he would lie about something as serious as this?
>
> Andrews: (Tearful) No.
>
> Prosecutor: Do you believe him?
>
> Andrews: Yes.
>
> Prosecutor: Do you think he was coached?
>
> Andrews: No.

Next, Grashunda Wafer, C.S.'s maternal grandmother, was asked whether she thought C.S. would lie about the allegations that are central to this case and she responded in the negative.

Both Andrews's and Wafer's rebuttal testimony echoed Officer Hicks's belief in C.S.'s allegations. Therefore, any error in admitting Officer Hicks's testimony was harmless because other evidence of C.S.'s truthful character was admitted without objection. *See Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (stating there was no harm because "the jury had already heard all of the facts upon which Davis's conclusion was based. . .The opinion here added little, if any, weight to Davis's testimony.").

After examining the record as a whole, we are assured that either the error did not influence the jury or did so only slightly. The testimony was not calculated to inflame the jury's emotions, substantially similar testimony was allowed without objection, the jury charge instructed the jury that it was the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and the jury heard C.S. provide a detailed account regarding Appellant's sexual assault.

## CONCLUSION

Considering the record as whole, we hold that the trial judge's admission of Officer Hicks's testimony did not affect Appellant's substantial rights and was therefore harmless. Finding this ground dispositive, we dismiss the State's first two grounds for review as improvidently granted. The judgment is reversed and remanded to the court of appeals to reach the merits of Appellant's remaining grounds.

Delivered: January 11, 2023

Publish