**Opinion filed October 29, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-08-00005-CR
_____

## WESLEY DON RHODES, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 266th District Court**

**Erath County, Texas**

**Trial Court Cause No. CR12766**

## M E M O R A N D U M   O P I N I O N

The jury convicted Wesley Don Rhodes of sexual assault of a child and assessed his punishment at twenty years confinement. We affirm.

### I. *Background Facts*

R.K. alleged that Rhodes, her father, sexually assaulted her while they were deer hunting. R.K. testified that he forced her down on a bed; took off her clothes; and, while using a rubber glove as a condom, penetrated her. Rhodes denied R.K.'s allegations. He contended that his wife was manipulating R.K. to gain an advantage in their pending divorce action.

## II. *Issues*

Rhodes challenges his conviction with four issues. Rhodes contends that the trial court erred by admitting evidence of the victim's good character, that the trial court erred by not holding an evidentiary hearing on an ineffective assistance of counsel claim raised in his motion for new trial, that the trial court deprived him of procedural due process when it ruled on his motion for new trial because the State's response included an affidavit that he had no opportunity to rebut, and that his trial counsel was constitutionally ineffective.

## III. *Character Evidence*

The State called Toby Cox as a character witness. Cox testified that he was an elementary school assistant principal but that he previously worked as a high school teacher and counselor and that R.K. was a high school student while he was a counselor. Cox testified over objection that R.K.'s reputation for being a truthful and honest person was good. The State also called Stan McVey as a character witness. He was an assistant high school principal who knew R.K. through FFA. He too testified over objection that R.K. was a truthful person. Rhodes contends that the trial court erred by overruling his objection to Cox's testimony because R.K.'s character had not been previously challenged. Rhodes does not challenge McVey's testimony.

To determine if character evidence is admissible, the Texas Court of Criminal Appeals distinguishes between an attack on a witness's character and an attack on the witness's accuracy. *See Michael v. State*, 235 S.W.3d 723, 726 (Tex. Crim. App. 2007). An attack on a witness's character is one that contends the witness is a liar and, therefore, is wrong about "X." A challenge to the witness's accuracy is one that concedes the witness may normally be a truthteller but contends that the witness is wrong about "X." Only when a witness's character for truthfulness is attacked may it be rehabilitated with good character evidence. *Id.* Impeachment by a prior inconsistent statement is normally just an attack on the witness's accuracy. *Id.* The test for trial courts is whether a reasonable juror would believe that a witness's character for truthfulness has been attacked by cross-examination, evidence from other witnesses, or statements of counsel. *Id.* at 728.

The State argues that Rhodes attacked R.K.'s character several times. The State initially points to Rhodes's opening statement. Rhodes's counsel told the jury that the allegations against his client were false, that R.K.'s mother was manipulating her for divorce purposes, that R.K.'s mother

had been physically abusive with her, and that psychological disorders run in her mother's family. To the extent these constitute a challenge to R.K. rather than her mother, they are not an attack on R.K.'s character.

The State next points to Rhodes's cross-examination of the outcry witness, Clinton Lynn Barnett. During that examination, Rhodes established that Barnett did not believe R.K. had told him everything, that Barnett pressured R.K. to come forward with her allegation, and that R.K.'s story became bigger and more elaborate with time. This is not a challenge to R.K.'s character but to the accuracy of her allegation. Finally, the State points to Rhodes's cross-examination of Don Beeson. At the time of trial, Beeson was a county commissioner, but he previously served as a detective for the Johnson County Sheriff's Department and was responsible for investigating crimes against children. Rhodes pointed out the inconsistencies between what R.K. told Beeson in an interview and what Barnett had said in a statement. This is also a challenge to R.K.'s accuracy and not a challenge to her character. Because Rhodes did not attack R.K.'s character for truthfulness, the trial court abused its discretion by allowing Cox to offer character evidence.

The erroneous admission of Cox's testimony is nonconstitutional error. *See Schutz v. State*, 63 S.W.3d 442, 444-46 (Tex. Crim. App. 2001) (improperly admitted expert testimony on the complainant's truthfulness is nonconstitutional error). Nonconstitutional error must be disregarded unless it affects the appellant's substantial rights. TEX. R. APP. P. 44.2(b). Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, the court has fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). When a trial court errs by improperly admitting evidence, an appellate court determines the likelihood that the error adversely affected the jury's decision by considering everything in the record, including: (1) testimony or physical evidence admitted for the jury's consideration; (2) the nature of the evidence supporting the verdict; (3) the character of the alleged error and how it might be considered in connection with other evidence in the case; (4) the jury instructions; (5) the State's theory and any defensive theories; (6) closing arguments; (7) voir dire; and (8) whether the State emphasized the error. *Haley v. State*, 173 S.W.3d 510, 518-19 (Tex. Crim. App. 2005).

3

Cox's testimony was brief, constituting less than three pages of the record. The majority of that testimony consisted of Cox identifying himself and explaining how he knew R.K.. Of relevance to this appeal are only two questions. Cox was asked if he was familiar with R.K.'s reputation for veracity and if that reputation was good. He answered both questions affirmatively without elaboration.

There was considerable testimony supporting the jury's verdict. R.K. testified that her father began assaulting her when she was eleven. In October 2005, during youth deer season, she and her father went hunting with other family members. They arrived at the campsite first and ate lunch. He then held her down on the bed and took her clothes off. He used a rubber glove as a condom and penetrated her. She did not say anything about this to her other family members when they arrived at the campsite or to anyone else at first, but she told her boyfriend in November 2006. She then told her mother. R.K. testified that her mother confronted her father, that her father essentially admitted molesting her, and that he then left the house.

R.K.'s mother and brother confirmed that Rhodes confessed and apologized when confronted with R.K.'s allegation and that he then left the house. R.K.'s mother testified that Rhodes was scared and shaking after the confrontation and that he begged her not to call the police. Rhodes denied that he had assaulted R.K., denied asking his wife not to call the police, and denied confessing. His recollection was that his wife confronted him with R.K.'s allegation, that he was shocked and angry, and that he said to her and his son: "[I]s all you want to hear me say is, yes, I did, and -- because you held out on me." He called his brother and nephew as witnesses, and both testified that R.K. did not act unusually at the deer lease.

Credibility was a key issue in this case because of the absence of corroborating evidence such as physical evidence or eye-witness testimony. The State's closing argument primarily addressed R.K.'s credibility but made only minimal reference to Cox's testimony. That testimony was merely referenced as an additional reason why R.K. was believable.

Considering the record as a whole, we are left with a fair assurance that the trial court's error influenced the jury only slightly. The testimony was brief, was not a principal part of the State's case, and did not differ in any material manner from McVey's testimony. Judging the nature of the evidence supporting the verdict and the character of the error and its relationship with the remainder

4

of the State's evidence, the trial court's error did not have a substantial and injurious effect or influence in determining the jury's verdict or affect Rhodes's substantial rights because the record does not support the conclusion that Cox's testimony supplanted the jury's credibility determination. *C.f., Schutz*, 63 S.W.3d at 445 (the danger posed by the erroneous admission of expert testimony on a witness's credibility is that the jury could allow this to supplant its decision). Issue One is overruled.

## IV. *Motion for New Trial*

Rhodes was sentenced on November 6, 2007. The trial court's jurisdiction to consider a motion for new trial expired on January 22, 2008. TEX. R. APP. P. 21.8(a). On December 4, Rhodes filed a motion for new trial and alleged that his trial counsel was constitutionally ineffective in a number of respects. That motion was supported by his own affidavit. Rhodes requested the trial court to hold a hearing on this motion. On January 17, the State filed a response. The State's response included an unsworn written reply from Rhodes's trial counsel to the ineffective assistance allegations. Rhodes objected to consideration of his motion without a hearing, contending that he had been given insufficient opportunity to marshal affidavits and to rebut trial counsel's unsworn statement.[1] On January 22, the State filed a supplemental response. That response included an affidavit from trial counsel, the substance of which was substantially similar to the initial unsworn written response. The trial court overruled Rhodes's objection and denied his motion for new trial.

Rhodes acknowledges that the trial court is not obligated to hold an evidentiary hearing on a motion for new trial and that it has the authority to consider that motion solely on the basis of affidavits. *See* TEX. R. APP. P. 21.7. But, Rhodes contends that the trial court's decision to rely solely on affidavits denied him constitutional due process because that decision was not made until shortly before the trial court lost jurisdiction and because the trial court considered an affidavit filed by the State on the last day of its jurisdiction.

The Fourteenth Amendment of the United States Constitution forbids deprivation of life, liberty, or property by the State without due process of law. U.S. CONST. amend. XIV. The Texas Constitution also requires due course of law. TEX. CONST. art. I, § 19. At a minimum, due course

---

[1]Rhodes attached several affidavits to his objection from friends and family members corroborating his ineffective assistance allegations.

requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Reed v. State*, 269 S.W.3d 619, 624 (Tex. App.—San Antonio 2008, no pet.).

Courts utilize the three-part balancing test first announced in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine whether procedural due process has been violated. *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). The factors to be balanced are:

(1)     the private interest that will be affected by the official action;

(2)     the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

(3)     the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* Rhodes's challenge focuses on the second and third factors, contending that he was entitled to more notice that no hearing would be held and that he was entitled to additional opportunity to rebut his trial counsel's affidavit.

As to Rhodes's first contention, he was on notice that the trial court had the authority to conduct an evidentiary hearing or rule strictly based upon affidavits and that the trial court's deadline for ruling was January 22. *See* TEX. R. APP. P. 21.7, 21.8(a). The trial court was not required to give Rhodes greater notice of its decision to not hold an evidentiary hearing. Rhodes had sufficient opportunity to marshal affidavits in support of the contentions he made in his motion for new trial, was on notice that affidavits might be the only evidence considered by the court, and knew that those affidavits were needed no later than January 22.

Nor were Rhodes's due process rights violated by his trial counsel's affidavit. In this regard, it is important to note that the affidavit was in response to Rhodes's allegations and that it was not an affirmative claim for relief. It is also noteworthy that, even though the affidavit itself was filed on January 22, Rhodes was given an unsworn version of that testimony on January 17 and that he was able to marshal several affidavits controverting his trial counsel's statements. The disputed issues raised by the opposing affidavits largely concerned the conduct of Rhodes's defense. The trial court was well-positioned to address that conflict having just presided over Rhodes's trial. Finally,

6

the trial court's decision to proceed solely on affidavits does not foreclose Rhodes's ability to pursue his ineffective assistance of counsel claim further through post-conviction procedures. The trial court did not violate Rhodes's due process rights. Issues Two and Three are overruled.

## V. *Ineffective Assistance of Counsel*

Rhodes contends that his trial counsel was constitutionally ineffective by not objecting to prejudicial outcry hearsay, by misrepresenting his legal background, by misrepresenting that it was illegal for him to contact any of the State's witnesses prior to trial, and by misrepresenting his pretrial investigation. To determine if trial counsel rendered ineffective assistance, we must first determine whether Rhodes has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668 (1984). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Rhodes must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Stafford v. State*, 813 S.W.2d 503, 508-09 (Tex. Crim. App. 1991). An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

A trial court's ruling denying a motion for new trial is typically reviewed under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). However, Rhodes's allegations involve mixed questions of law and fact. We must afford almost total deference to a trial court's determination of the historical facts and of mixed questions of law and fact that turn on the credibility and demeanor of witnesses. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Rhodes's allegations that his trial counsel was ineffective because of misrepresentations concerning his background, pretrial investigation, and the rules for contacting witnesses all involve disputed fact issues. The trial court did not abuse its discretion by finding trial counsel's affidavit testimony more credible than the affidavits filed by Rhodes.

Rhodes also complains that trial counsel was constitutionally ineffective because he did not object to hearsay testimony. Rhodes does not identify the specific testimony but refers us to twenty

7

pages of the record. His complaint has not been preserved. *See* TEX. R. APP. P. 38.1(i). We have, however, reviewed the record. R.K.'s ex-boyfriend and mother were asked about statements R.K. made to them. Rhodes's trial counsel elicited some hearsay testimony during his cross-examination of R.K.'s ex-boyfriend. But by doing so, counsel established that R.K.'s story became bigger with time and that the ex-boyfriend threatened to leave R.K. unless she came forward with her allegation. This was an appropriate trial strategy because it undermined both R.K.'s testimony and the ex-boyfriend's testimony. The remainder of the testimony contains nothing significant that R.K. did not testify to herself. Thus, there was no harm. Issue Four is overruled.

VI. *Holding*

The judgment of the trial court is affirmed.


RICK STRANGE

JUSTICE


October 29, 2009

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

8