Opinion filed April 9, 2026



### In The

# Eleventh Court of Appeals

_____

## No. 11-24-00230-CR

_____

**FRED GONZALES, Appellant**

### V.

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 91st District Court**
**Eastland County, Texas**
**Trial Court Cause No. 26116**

## M E M O R A N D U M   O P I N I O N

Appellant, Fred Gonzales, challenges his conviction for aggravated assault with a deadly weapon, a second-degree felony, enhanced by two prior felony convictions. *See* TEX. PENAL CODE ANN. § 12.42(d (West Supp. 2025), § 22.02(a)(2) (West 2026). Due to Appellant's habitual offender status, he faced a punishment range of imprisonment for twenty-five years to life. *See id.* § 12.42(d). Following a jury trial and Appellant's pleas of "true" to the enhancement allegations, the jury

assessed Appellant's punishment at twenty-five years' imprisonment, and the trial court sentenced him accordingly. In two issues, Appellant asserts that: (1) he received ineffective assistance of counsel; and (2) the trial court abused its discretion in failing to hold a hearing on his motion for new trial. We affirm.

I. *Factual and Procedural History*

Appellant was indicted on July 16, 2021, for aggravated assault with a deadly weapon over an incident occurring three months prior. At the request of Appellant's trial counsel Appellant was examined for competency, and in October 2021 was found to be incompetent to stand trial. His competency was restored in June 2024. Two months later, before trial began and outside the presence of the venire panel, Appellant was admonished on the punishment range he faced, and Appellant made the following statements in response to relevant questioning on the record:

> [COUNSEL]: Now, the State this morning, they had offered you a Class A misdemeanor Friday with time served. And the State this morning offered you a Class B misdemeanor time served. But you didn't want to take that?
>
> [APPELLANT]: No, sir.
>
> [COUNSEL]: Correct? Because you feel like the parole board will send you back to prison?
>
> [APPELLANT]: I'm innocent.

Appellant did not elaborate, and no follow-up questions were asked. The trial proceeded. We summarize the relevant testimony below.

On April 11, 2021, Eastland County Sheriff's Office (ECSO) Deputy David Bosecker responded to reports that an unidentified, highly intoxicated individual had been injured in an altercation at the lake. Deputy Bosecker was killed in the line of duty the summer before trial. At trial, ECSO Chief Deputy Jonathan Simcik testified regarding Deputy Bosecker's investigation. Chief Deputy Simcik testified that, according to Deputy Bosecker, Appellant was in his pickup and was approached by

2

the victim, later identified as Edgar Aguilar; Appellant then exited his pickup and swung a baseball bat at Aguilar, "using the bat in . . . self defense." Appellant hit Aguilar in the hand, arm, and "around the neck and the head area" with the baseball bat.

Deputy Bosecker's dash cam recording was admitted as an exhibit at trial. As shown in the dash cam recording, Appellant initially told Deputy Bosecker that he could not remember whether Aguilar had struck him. Appellant later equivocated and stated that indeed Aguilar had struck him, and that Appellant hit Aguilar with a bat in self-defense. When asked a third time about whether Aguilar ever struck Appellant, Appellant replied that Aguilar had only "attempted to." Throughout Appellant's discussion with Deputy Bosecker, Appellant maintained that he did not want to pursue "charges" against Aguilar.

Chief Deputy Simcik confirmed that Appellant was older, shorter, and thinner than Aguilar but stated that Aguilar's intoxicated state made him less of a threat. Chief Deputy Simcik opined that Appellant had not acted in self-defense because when Aguilar approached Appellant's pickup unarmed, Appellant could have driven away, secured himself inside his pickup, and/or called 9-1-1.

Aguilar testified that on April 11, 2021, he had been at the lake with his on-again, off-again girlfriend, April Piseno. He had been fishing and drinking when he saw a white pickup pull up. Piseno walked over to the pickup and Aguilar followed, recognizing Appellant. Aguilar testified that after Piseno and Appellant talked "for a little bit," Appellant exited his pickup with a bat and started swinging at Aguilar. When Aguilar was asked if he had hit Appellant, Aguilar replied, "I don't think I did, to be honest. [Appellant] started swinging at me. I started to try to defend myself, start blocking." Aguilar testified that he was struck at least four times—on his hand, on his elbow, and twice on the head—and sustained a broken hand while trying to block Appellant from hitting his head with the bat. When Deputy Bosecker

3

arrived, Aguilar was handcuffed and placed in the backseat of the patrol unit. Aguilar testified that an ambulance arrived, and that the next thing he remembered was waking up at a hospital in Fort Worth. Aguliar's medical records were also admitted at trial. The records indicated that Aguilar was transported to the hospital via an emergency air flight. Aguilar did not dispute that he had been highly intoxicated and belligerent that afternoon.

At the close of Aguilar's testimony, Appellant moved for a directed verdict, which was overruled by the trial court. Appellant then took the stand. Appellant testified that on April 11, 2021, he had received a text message from Piseno, who he had previously dated. She asked him if he could go pick her up. A phone call followed, wherein she told Appellant that Aguilar had been mistreating her. Appellant testified that after he arrived at the lake, Piseno approached his pickup and he "asked if she was going to come, and she told [Appellant] she was going to get her [belongings]." Appellant testified that while he waited inside his pickup for Piseno to return, Aguilar came "around, and right away he start[ed] talking stuff." According to Appellant, Aguilar wanted him to get out of his pickup to fight. Appellant replied, "No, you know, my age and my size, if I get off this pickup, it's going to be with a bat." Appellant testified that Aguilar continued to taunt him before rushing him and punching him through the pickup window. In response, Appellant hit Aguilar through the window with a bat. Aguilar then opened his door and dragged him out of the pickup. Appellant testified that he had received "about five or six" punches "everywhere" on his body before he struck Aguilar. The jurors received an instruction on self-defense but returned a guilty verdict.

Following the trial, Appellant filed a motion for new trial. Appellant argued, in relevant part:

> The verdict in this cause is contrary to the law and the evidence.
> *See* Tex. R. App. P. 21.3.

4

In support of [Appellant]'s motion, the following facts outside the record are hereby alleged:

. . . .

[Appellant's trial] counsel did not show [Appellant] any of the videos in the case. Had [Appellant] seen the videos prior to trial, [Appellant] would have accepted the State's misdemeanor plea offer.

Appellant requested a hearing on his motion and attached a single affidavit, wherein his appellate counsel swore:

Appellate counsel interviewed [Appellant] on August 29, 2024 in the Eastland County jail. [Appellant] stated the following:

. . . .

[Appellant' trial] counsel did not show [Appellant] any of the videos in the case. Had [Appellant] seen the videos prior to trial, [Appellant] would have accepted the State's misdemeanor plea offer.

Appellant filed a second request for a hearing on his motion, and the trial court denied Appellant's request for a hearing with a written order. Appellant's motion for new trial was denied by operation of law. TEX. R. APP. P. 21.8(c). This appeal followed.

## II. *Ineffective Assistance of Counsel*

In his first issue, Appellant contends his trial counsel was ineffective "for failing to show [him] the State's video[][1] before [he] rejected the State's misdemeanor plea offer."

### A. *Standard of Review and Applicable Law*

We review an ineffective-assistance-of-counsel complaint under the two-part standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed

---

[1]Although the motion for new trial and affidavit complained that Appellant's trial counsel did not show him "any of the videos" (plural), Appellant only addresses a single video, State's Exhibit No. 2, on appeal, which he asserts was not shown to him prior to his decision to reject the State's plea offer. State's Exhibit No. 2 is the only video that was admitted into evidence at trial.

on a claim of ineffective assistance of counsel, Appellant must satisfy both prongs of the *Strickland* standard: (1) performance and (2) prejudice. *Strickland*, 466 U.S. at 687; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010). The failure to succeed on either *Strickland* prong is fatal to a claim of ineffectiveness. *Perez*, 310 S.W.3d at 893.

First, Appellant must show that trial counsel's representation was deficient in that it fell below an objective standard of reasonableness. *Perez*, 310 S.W.3d at 892–93. Second, Appellant must show that trial counsel's deficient performance prejudiced his defense—that is, counsel's errors were so serious as to deprive Appellant of a fair trial and, as a result, there is a reasonable probability that the outcome of his trial would have been different but for counsel's errors. *Id.* at 893; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 687–88). The "reasonable probability" component must rise to the level such that it is sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. "This is a heavy burden which requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result." *Walker v. State*, 406 S.W.3d 590, 599 (Tex. App.—Eastland 2013, pet. ref'd) (quoting *United States v. Wines*, 691 F.3d 599, 604 (5th Cir. 2012)).

There is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Isham v. State*, 258 S.W.3d 244, 250 (Tex. App.—Eastland 2008, pet. ref'd). To overcome this deferential presumption, a claim of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson*, 9 S.W.3d at 814; *Walker*, 406 S.W.3d at 593–94. In this regard, we will not inquire into counsel's trial strategy unless no possible basis exists to support such strategy or tactics. *Johnson v. State*, 614 S.W.2d 148, 152 (Tex. Crim.

App. [Panel Op.] 1981).  Thus, in our analysis, we must make every effort to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

With respect to the second prong of the *Strickland* analysis, the Court of Criminal Appeals has adopted the following three-part test in the context of plea negotiations:

> [T]o establish prejudice due to counsel's ineffective assistance in the context of pretrial plea negotiations, a defendant must show a reasonable probability that he would have accepted the original offer if counsel had not given ineffective assistance, that the State would not have withdrawn the offer, and that the trial court would have accepted the plea bargain.

*Rodriguez v. State*, 470 S.W.3d 823, 828 (Tex. Crim. App. 2015) (citing *Ex parte Argent*, 393 S.W.3d 781, 784 (Tex. Crim. App. 2013)); *see Missouri v. Frye*, 566 U.S. 134, 147 (2012); *Riggins v. State*, 714 S.W.3d 74, 89 (Tex. App.—Houston [1st Dist.] 2023, pet. ref'd).  "This standard demands more from applicants seeking to demonstrate that they received ineffective assistance of counsel." *Argent*, 393 S.W.3d at 783.

B. *Analysis*

Regarding the first *Strickland* prong, the record here does not affirmatively demonstrate that Appellant's trial counsel was deficient in his performance. *See Strickland*, 466 U.S. at 689.  Appellant argues on appeal that his trial counsel failed to show him a single item of discovery: a dash cam recording capturing the interaction between him and the responding officer.  However, the only proof that trial counsel did not allegedly review this discovery with Appellant is found in an affidavit attached to Appellant's motion for new trial.

Assuming, but not deciding, that the attached affidavit is evidence that the video at issue was not shown to Appellant prior to trial, we "may only find ineffective assistance of counsel" if we were to conclude that trial counsel's conduct

7

"was so outrageous that no competent attorney would have engaged in it." *See Poor v. State*, 715 S.W.3d 15, 38 (Tex. App.—Eastland 2024, pet. ref'd). Our review standard is highly deferential to trial counsel, avoiding the distorting effects of hindsight, and indulging in a strong presumption that the representation counsel provided was within the wide range of reasonable professional assistance. *Perez*, 310 S.W.3d at 892–93. In the absence of evidence of counsel's reasons for the challenged conduct, we must "assume a strategic motivation if any can possibly be imagined." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (quoting 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.10(c) (2d. ed 1999)). Here, it is quite possible that counsel, who did not object to the admission of the recording, believed that Appellant would know the contents of the recording, having been a party to the recorded conversation with Deputy Bosecker. The recording also presumably contains substantively similar information as that found in the police report and "police documentation," discussed with him during the competency proceedings.

It is likewise possible that trial counsel believed that Appellant's version of the events as stated to Deputy Bosecker, in large part was consistent with Appellant's trial testimony. It included: (1) Aguilar continually baiting Appellant to get out of his pickup; (2) Appellant repeatedly telling Deputy Bosecker that Aguilar came at him and his pickup; and (3) Aguliar's relative size to Appellant, that Aguilar was larger and younger than him and therefore a bat was needed to protect himself—which if accepted by the jury, might have strengthened Appellant's self-defense claim, leading the jury to believe that a weapon was actually needed to protect himself.

We additionally observe that neither party operated at trial as though the video possessed the level of significance that Appellant argues it has today. Neither

8

Appellant's counsel nor the State addressed the video in opening arguments, and the State only briefly referenced the video in the State's closing argument.

In light of the above, Appellant has not shown that trial counsel's conduct fell below an objective standard of reasonableness. *See Perez*, 310 S.W.3d at 892–93. Even if we accept Appellant's contention that trial counsel's conduct fell below an objective standard of reasonableness, which we do not, Appellant cannot prevail under the prejudice prong. *Id.* at 893. To establish prejudice, *Argent* requires that Appellant demonstrate that there was reasonable probability that he would have accepted the plea offer without the prosecution withdrawing the offer or the trial court refusing to accept the plea bargain. *Argent*, 393 S.W.3d at 783–84. Appellant has made no attempt to establish either of these on appeal, and there is no evidence that the trial court would have accepted a plea bargain that allowed him to plead guilty to a Class B misdemeanor with no additional jail time where the indicted offense was aggravated assault with a deadly weapon, the victim was present for trial, and the victim's injuries were severe enough that he had to be airlifted to the hospital for treatment. *See, e.g.*, *Lucero v. State*, No. 03-21-00313-CR, 2022 WL 16556833, at *8 (Tex. App.—Austin Oct. 31, 2022, no pet.) (mem. op., not designated for publication) (rejecting appellant's argument that trial counsel was ineffective where appellant failed to address whether the trial court would have accepted the plea agreement); *Ramos v. State*, No. 13-13-00563-CR, 2014 WL 6085612, at *3 (Tex. App.—Corpus Christi–Edinburg Nov. 13, 2014, no pet.) (mem. op., not designated for publication) (same). Because Appellant's claim of ineffective assistance is little more than an assertion unsupported by the record, we overrule Appellant's first issue.

### III. *Motion for New Trial*

In his second issue, Appellant contends that the trial court abused its discretion by denying his request for a hearing on his motion for new trial.

We review a trial court's decision to deny a hearing on a motion for new trial under an abuse of discretion standard. *Montelongo v. State*, 623 S.W.3d 819, 824 (Tex. Crim. App. 2021). Our review is "limited to the trial judge's determination of whether the defendant has raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief." *Gonzales v. State*, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010) (quoting *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009)). Where both criteria are met, the trial court abuses its discretion in failing to hold a hearing. *Id.*; *Beseril v. State*, No. 11-21-00023-CR, 2022 WL 4099416, at *2 (Tex. App.—Eastland Sept. 8, 2022, no pet.) (mem. op., not designated for publication). A trial court additionally abuses its discretion when "no reasonable view of the record could support the trial court's ruling." *Collier v. State*, 528 S.W.3d 544, 546 (Tex. App.—Eastland 2016, pet. ref'd); *Rhodes v. State*, 308 S.W.3d 6, 12 (Tex. App.—Eastland 2009, pet. ref'd, untimely filed).

As a prerequisite to securing a hearing on a motion for new trial, the defendant is required to support the motion with an affidavit specifically setting out the factual basis for the claims. *Smith*, 286 S.W.3d at 339; *Morse v. State*, No. 11-12-00143-CR, 2014 WL 3639141, at *7 (Tex. App.—Eastland July 17, 2014, pet. ref'd) (mem. op., not designated for publication) (The defendant must support the motion with an affidavit specifically showing the truth of the grounds for attack.). "The affidavit need not establish a *prima facie* case. . . . [I]t is sufficient if a fair reading of it gives rise to reasonable grounds in support of the claim." *Smith*, 286 S.W.3d at 339. However, "affidavits that are conclusory in nature and unsupported by facts do not provide the requisite notice of the basis for the relief claimed; thus, no hearing is required." *Id.* And while the defendant need not plead a prima facie case, "he must at least allege facts that show reasonable grounds to believe that he *could* prevail under *both* prongs of the [*Strickland*] test." *Id.* at 338.

Here, the only affidavit attached to Appellant's motion for new trial was from Appellant's appellate counsel, wherein she reiterated what Appellant had told her. The State argues that the attached affidavit is self-serving hearsay that contradicts Appellant's contention of innocence for rejecting the State's plea offer, which he stated on the record before trial, and it therefore constitutes insufficient evidence. The trial court was free to refuse to consider the statements in counsel's affidavit as unpersuasive and/or contradictory to his stated reasoning when he rejected the offer prior to trial. *Cooks v. State*, 240 S.W.3d 906, 912 (Tex. Crim. App. 2007); *Proctor v. State*, 319 S.W.3d 175, 185 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see, e.g.*, *Ilodiguwe v. State*, No. 01-14-00231-CR, 2015 WL 5076285, at *9 (Tex. App.—Houston [1st Dist.] Aug. 27, 2015, no pet.) (mem. op., not designated for publication) (concluding that where the only affidavit in support of appellant's motion for new trial based on ineffective representation was the affidavit of appellate counsel relaying statements appellant had communicated, the trial court did not abuse its discretion in denying a hearing on the motion).

Appellant cites to two cases in his analysis of this issue: *Martinez v. State*, 74 S.W.3d 19, 20 (Tex. Crim. App. 2002) and *Hobbs v. State*, 298 S.W.3d 193, 201 (Tex. Crim. App. 2009). Both cases are distinguishable, as they involved appellants who filed sworn affidavits themselves in support of their motions for new trial. Here, the only affidavit was from Appellant's appellate counsel, which the court in *Hobbs* noted was different from the situation before it. *See Hobbs*, 298 S.W.3d 200 n.32 (distinguishing its facts from a case where the only verification affidavit was from the appellant's counsel, "who could not have personal knowledge of all of the facts alleged in the motion").

In addition to the deficient affidavit, we observe that the judge who declined to hold a hearing on Appellant's motion for new trial was the same judge who had presided over all pretrial and trial matters. The trial court was well positioned to

make a determination that Appellant's claim in his motion for new trial—namely, that (1) his trial counsel had neglected to show him the video, *and* (2) had he seen the video, he would have had a "clear understanding of his culpability" and pleaded guilty—were unsupported by the record. Although the recording contains equivocal statements by Appellant concerning whether Aguilar had, in fact, struck him,[2] Appellant maintained throughout the recording that he acted in self-defense in the assault of Aguilar. This is consistent with what Appellant testified to during trial. When asked if fear of the parole implications was the reason that he was rejecting the State's plea bargain offer, Appellant's explanation was, "I'm Innocent." Accepting the plea bargain would have reduced his second-degree felony—with a twenty-five year mandatory minimum term of imprisonment for a habitual offender—to a Class B misdemeanor offense with "time served."

Having heard Appellant's statements and his rejection of the State's plea offer, and having observed the witnesses and evidence firsthand, the trial court was in the best position to weigh whether Appellant's motion and supporting affidavit alleged sufficient facts to meet both prongs of the *Strickland* test. The trial court was in the best position to determine "whether [he] raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle [him] to relief," and whether, absent the video, Appellant would have, in fact, accepted the State's offer and pleaded guilty; or whether Appellant's motion for new trial and related appellate claim are more a function of "buyer's remorse." *See Smith*, 286 S.W.3d at 340; *Kim v. State*, 283 S.W.3d 473, 474–75 (Tex. App—Fort Worth 2009, pet. ref'd) (referencing "[t]he oft-told tale of buyer's remorse" when appellant rejected the State's offer, proceeded to trial, and received an adverse verdict but then

---

[2]First, he averred he could not remember whether Aguilar had struck him, stating, "Uh. I can't remember anything"; then, similar to his testimony at trial, Appellant stated Aguilar had hit him and "came into [his] pickup"; and when pressed on the issue for a third time, Appellant stated that Aguilar had merely "attempted to" hit him but never "connected."

filed a motion for new trial); *see also Allen v. State*, No. 04-16-00672-CR, 2017 WL 4014689, at *3 (Tex. App.—San Antonio Sept. 13, 2017, no pet.) (mem. op., not designated for publication).

Deferring to the trial court's credibility determinations, we hold that the trial court did not abuse its discretion in denying an evidentiary hearing on Appellant's motion for new trial. *See Smith*, 286 S.W.3d at 338–39. We overrule Appellant's second issue.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS

JUSTICE

April 9, 2026

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.